## LEE PLUMLEY v. STATE.

No. A-9697. Feb. 29, 1940.
(100 P. 2d 299.)

66

H. H. Cook, of Atoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the State.

DOYLE, P. J. This appeal is prosecuted from a conviction had upon an information charging the defendant, Lee Plumley, with the theft of a red white faced heifer, having no marks or brands, the property of Wesley Clark, in Atoka county, on the 28th day of March, 1938. In accordance with the verdict of the jury he was sentenced to serve a term of two years in the state penitentiary.

The errors assigned question the sufficiency of the evidence to support the verdict.

The evidence is substantially as follows:

Wesley Clark testified:

"I live three miles northwest of Boggy Depot, on the date alleged I was the owner of a red white faced heifer, without marks or brands, that was taken from

the range without my knowledge or consent, shortly after I found the heifer in George Ginn's pasture, eight miles north of Ardmore, took possession and brought it home."

W. J. Smith testified:

"I have lived in Ardmore 49 years, and have a sale yard, on Monday, about 4 p. m., Lee Plumley drove into the sale yard with a white faced heifer in the turtle back of the car, Lee said 'Here is a calf that belongs to this fellow that I hauled here for him'. The man said he wanted $15 for it, I said the calf would have sold for more if they had it there in time, but $12.50 was all I could give, I wrote a check for $12.50, payable to George Bates. He indorsed the check and it was admitted in evidence. It was indorsed George Bates, Lee Plumley, I sold the heifer to George Ginn who lives eight miles north of Ardmore. I have known Lee Plumley about two months, I think he was over here four or five times, most every week, hauling stuff, and John Simpson who lives at Wapanucka was with him, it seems to me that there was no lid on the turtle back."

L. L. Cathey testified:

"I have lived in Ardmore 38 years, now engaged in business with the Guy Harris Motor Company, I know the defendant, Lee Plumley, I sold him a car about 30 days before on time payment of $2.50 a week, this check was presented by a man who was with Plumley, George Bates indorsed it first, I didn't know Bates, Mr. Plumley identified him, and I had him indorse it also. I applied $2.50 on Plumley's notes, and gave the man, Bates, $10 in cash. Mr. Plumley up to that time kept up his payments of $2.50 a week."

Tom Kilmer testified:

"I have been sheriff of Atoka county, I arrested Mr. Plumley on this charge, while he was in jail before he made bond, he said if he could get out he could find George Bates, I had a warrant for George Bates, but I have not been able to locate such a man, I found a George

Bates at Wapanucka, took him to Ardmore to be identified, and they said he was not the man that sold the heifer, Mr. Plumley never did make any effort to find this man George Bates."

The state rested and the defendant interposed a demurrer to the evidence, and moved the court to direct the jury to return a verdict of acquittal, because the evidence is insufficient to sustain a conviction.

On the part of the defense, Friz Johnson, a colored man, testified:

"I am a farmer. I live a mile and a half southeast of Folsom. I have lived there many years with my family. I have known Lee Plumley four or five years. I generally go to Atoka on Saturdays. I was here in Atoka the latter part of March, on Saturday, I don't know the date, and had a talk with Lee Plumley on the south side of Mr. Walker's store, where we were sitting, when a man walked up and asked Mr. Plumley if he would do some hauling; that he had some yearlings to take to market; Mr. Plumley said, 'I can haul them if you get them to where I can get to them,' then I walked away. Mr. Plumley's car was there at the time."

On cross-examination he stated: "I know John Simpson, and the man was not John Simpson."

The defendant testified in his own behalf and stated:

"I live two miles east of Folsom with my wife and three children. I am in the roustabout business, hauling stock, I have had deals with Mr. Smith at Ardmore, and I bought a car there from Mr. Cathey, on $2.50 a week payments. I was in Atoka Saturday; parked my car on Walker street, I was talking to this colored man; he was trying to swap me out of the car. Bates came up and asked if he could get me to haul some cattle. I said this weather is bad, but I could haul the stuff if I could get to them. He told me where it was, back in the jungles. I said that was a pretty rough road, and I didn't think I could haul it out of there; he said he could put it on

the main road, between the Boggy Depot and the Coleman road. I told him if he would do that I could take it on for him, and it was agreed if nothing happened I would be there Monday morning. I had a two-wheel trailer I bought a week or two before that. Monday morning I started out and bogged the trailer down. I unhooked the trailer out of the road, then drove on to tell him that I could not haul the stuff, because the trailer was down. He was there and had a yearling on the end of a rope. I told him my trailer was bogged down; he said, 'Well I had almost as hard luck as you had,' that he didn't have but this one, and he would sure like to take this yearling. I said, 'I don't know, maybe we can get it over there.' He said, 'What is wrong with that turtle back?' and we finally loaded the yearling. We nearly stuck a time or two before we got to Ardmore, about 4 o'clock. It had been raining all day. When I first made the deal I was supposed to get $7.50 for the load, but I told him I would charge only $2.50. I was going over to Ardmore anyhow. Mr. Smith said we could get the check cashed at two or three stores, and we could not. I told Bates there was one chance, and I talked to Mr. Cathey. I told him Bates owed me $2.50, and he cashed the check, applied $2.50 on my debt, and gave me a receipt, which I have here, and gave the fellow Bates $10.00. I did not know this man, Bates but a short time. I have never been convicted of a crime or legally charged."

On cross-examination he stated he had hauled cattle three or four times at least to Ardmore, and was there with John Simpson, who handles cattle, that he also hauled cattle to Oklahoma City. "I lived about three and a half miles south and about a mile and a half east of Wapanucka at that time," that Wesley Clark lived about five miles from where he lives, that Bates said he lived between Caney and Coleman, "I only knew his name was George."

The foregoing testimony embraces all the substantial facts and circumstances in evidence.

It is well-settled law in this state that if there is evidence to support the conviction this court will not weigh the sufficiency of the same to support the verdict. It is, however, equally well-settled law in this state that this court will consider all the evidence to ascertain whether a verdict is in fact founded upon sufficient evidence to warrant a conviction.

If the evidence introduced by the state fails to incriminate the defendant, or as a matter of law is insufficient to show that he is guilty of the offense charged, it is not only the right but the duty of the trial court to advise the jury to return a verdict of acquittal. Code of Criminal Procedure, sec. 3090, 22 Okla. St. Ann. § 850. The court may do this of its own motion and the defendant may present to the court his right to an acquittal as a matter of law, under this section, but the defendant is not confined to the formula, or to any form of words in presenting to the court his right to be acquitted; all that is necessary is that in some intelligible form there shall be presented to the court for its ruling and decision the question that there is not sufficient evidence to warrant a conviction.

It appears from the record that the sole ground upon which the case was submitted to the jury was that the defendant hauled the animal in question with the man who claimed to be the owner, to Ardmore, and this man became a fugitive from justice and was never apprehended. There is no testimony in the record which by circumstance or otherwise connects the defendant with the taking of the animal from the possession of the owner. It also appears that the charge of the court did not contain an instruction on circumstantial evidence. However, the defendant did not object to the instructions given by the court and did not request any instructions.

It is unquestionably the law that crime may be established by circumstantial evidence, otherwise society would be at the mercy of the criminal class, but it is also uniformly held that the circumstantial evidence must go beyond mere suspicion and conjecture, and where circumstantial evidence solely is relied on for a conviction, the circumstances tending to show guilt must be consistent, the one with the other, and point so strongly to the guilt of the defendant, as to exclude every other reasonable hypothesis except that of guilt.

Can it reasonably be said from the fact that this defendant hauled the stolen animal in his car for and with the one who was the thief, that he had knowledge that it was a stolen animal, and that this circumstance alone was sufficient to show his complicity in the crime charged? We think that it was not, and for this reason the motion for a directed verdict of acquittal should have been sustained.

After a careful consideration of all the testimony offered by the state and the defendant, we are of opinion that, as a matter of law, the evidence was insufficient to warrant a conviction. It follows that the judgment appealed from should be reversed. It is so ordered.

BAREFOOT and JONES, JJ., concur.